**ALASKA INSURANCE COMPANY, Appellant,**

v.

**MOVIN' ON CONSTRUCTION, INC., and Donald G. Hannah, Appellees.**

**No. S–835.**

Supreme Court of Alaska.

May 9, 1986.

As Amended May 13, 1986.

---

Roger G. Connor, James T. Robinson, Smith, Robinson, Gruening and Brecht, Anchorage, for appellant.

Donna C. Willard, Willoughby & Willard, Anchorage, for appellees.

Before RABINOWITZ, C.J., and MATTHEWS, COMPTON and MOORE, JJ.

### OPINION

COMPTON, Justice.

## I. FACTS AND PROCEEDINGS

This case arises out of Appellant Alaska Insurance Company's (AIC) denial of a claim for insurance coverage made by Appellee Movin' On Construction under a policy which it had purchased to cover its construction activities.

The claim followed the collapse of a house under which Movin' On had contract-ed to build a full basement. Movin' On subcontracted both the excavation and raising of the house. While the house was resting on crib jacks in its raised position, and before construction of the basement was completed, several days of rain caused one corner crib base to sink and the house to collapse.

Movin' On accepted blame for the accident and contacted Thomas Bowers, the insurance agent through which it had purchased the policy. Bowers notified Alaska Insurance Company, who had issued the policy. AIC hired an independent adjuster, who told Movin' On that he would recommend payment of his claim. Bowers then told Movin' On's president, Don Hannah, that he could begin to repair the house. Almost two months later, when the work was nearly complete, the claim was denied.

Movin' On sued AIC under several theories, including breach of contract and negligent and fraudulent misrepresentation. The jury found unanimously in favor of Movin' On on the basis of fraud. It did not reach the other theories. We affirm and remand for modification of damages.

## II. ISSUES ON APPEAL

### A. DID THE TRIAL COURT ERR IN DENYING AIC'S MOTION FOR A DIRECTED VERDICT?

At the close of all the evidence, AIC moved for a directed verdict, seeking a ruling by the trial court that coverage was excluded by the terms of the policy as a matter of law. On appeal, AIC challenges denial of that motion.

AIC moved for a directed verdict only "on the coverage question." Although Judge Shortell agreed with AIC's interpretation of the policy language, he denied AIC's motion for directed verdict. He instead asked counsel for AIC to submit jury instructions directing the jury to interpret the language of the exclusion according to AIC's position. Counsel for AIC agreed to this resolution without objection. The judge ultimately gave instructions parallel to the language in the exclusionary provi-

sion which was the focal point of the coverage issue.

Movin' On had raised several other issues at trial, including allegations of fraudulent and negligent misrepresentation. The jury found that the actions of AIC constituted fraud, and awarded Movin' On $329,558.17 in compensatory damages and $988,674.51 in punitive damages. In making its finding of fraud, the jury never reached the coverage issue.[1]

■ We need not decide whether Judge Shortell correctly denied AIC's motion for directed verdict. The jury found AIC liable under the theory of fraud, which would have been presented to them regardless of whether the trial court granted a directed verdict on the coverage issue or not. Since the jury did not reach the coverage issue, any error in denying AIC's motion for directed verdict was harmless.

## B. DID THE COURT ERR IN ADMITTING THOMAS BOWERS' EXPERT TESTIMONY ON THE ISSUE OF COVERAGE?

■ AIC contends that the trial court erred in allowing Thomas Bowers, the agent who sold the insurance policy to Movin' On, to give an expert opinion that the policy provided coverage for the collapse of the house. AIC argues that coverage is a question of law, thus admitting opinion on the issue of coverage usurps the province of the court.

Whether or not Bowers' testimony was erroneously admitted, the error was harmless. Bowers' opinion had no effect on the jury's verdict because the jury did not reach the question of whether AIC wrongfully denied coverage. It unanimously found AIC guilty of fraud, which makes the coverage question irrelevant.

1. AIC candidly admits that it cannot challenge the jury's finding of fraud on appeal, as it failed to raise the issue below in its motion for a new trial. Counsel on appeal did not serve as trial counsel, nor did they file the motion for a new trial.

## C. WERE THE DAMAGES AWARDED EXCESSIVE?

The jury awarded Movin' On $329,558.17 in compensatory damages and $988,674.51 in punitive damages. AIC contends that these damages were excessive and the result of passion and prejudice on the part of the jury. They ask this court to order a new trial because "the prejudice may have infected all the decisions of the jury." Alternatively, they request remittitur.

### 1. *Compensatory Damages.*

The record shows that the replacement cost of the collapsed house was $80,217.50. An accountant testified that Movin' On incurred another $100,000 to $150,000 in damages as a result of lost business while the collapsed house was reconstructed, and of the forced sale of an investment property to cover rebuilding costs. Testimony also was presented relating to loss of rental income and tax credits on the investment unit, and harm to Movin' On's credit rating and business relationships due to its cash-flow problems. However, Movin' On did not attempt to place any monetary value on these losses.

■ In actions based on misrepresentation, damages must be established with reasonable certainty. They may not be speculative or contingent. *Orsini v. Bratten,* 713 P.2d 791, 794 n. 6 (Alaska 1986); *Transamerica Title Insurance Co. v. Ramsey,* 507 P.2d 492, 497 (Alaska 1973). We believe that the maximum award the jury could have made, based on the evidence presented at trial, is the sum of the replacement cost of the house ($80,217.50) and damages from lost business ($150,000), or $230,217.50. Remittitur of compensatory damages to that amount is therefore required.[2]

2. In the alternative, Movin' On is entitled to a new trial in the event that it does not accept the remittitur. *Sturm, Ruger & Co. v. Day,* 615 P.2d 621, 624 n. 5 (Alaska 1980), *cert. denied,* 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981).

### 2. *Punitive Damages.*

AIC gives two reasons to support its contention that the punitive damages were excessive.

First, AIC argues that there is really "not even evidence which would support a finding of fraud in this case." As noted above, AIC cannot challenge the fraud verdict directly because it failed to raise the issue in its motion for a new trial below. Arguing that issue under a claim of excessive damages is merely an impermissible attempt to relitigate the fraud verdict through the back door.

 Second, AIC contends that the punitive damage award is excessive because it is three times the compensatory damage award. Although comparison of actual and punitive damages is a factor which may enter into a determination of excessiveness, *Sturm, Ruger & Co. v. Day*, 615 P.2d 621, 624 n. 3 (Alaska 1980), *cert. denied*, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981), no definite ratio between them is prescribed. *Sturm, Ruger & Co. v. Day*, 594 P.2d 38, 48 (Alaska 1979) (*citing Taylor v. Williamson*, 197 Iowa 88, 196 N.W. 713 (1924)), *modified*, 615 P.2d 621 (Alaska 1980), *cert. denied*, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981), *overruled on other grounds, Dura Corp. v. Harned*, 703 P.2d 396 (Alaska 1985). Simply pointing to the ratio does not establish excessiveness.

Although the ratio of punitive to compensatory damages does not establish excessiveness, that ratio is important in this case for another reason. We believe that to effectuate the jury's evident intent in awarding punitive damages equaling three times the amount of compensatory damages, we must reduce the punitive damages awarded in proportion to the reduction we have ordered in compensatory damages.

It is generally for the jury to decide the proper proportion of compensatory to punitive damages. *Guillory v. Godfrey*, 134 Cal.App.2d 628, 286 P.2d 474, 478 (1955). Here the jury did not pick a random, round number as its award of punitive damages. Rather, it awarded *exactly* three times the amount it had determined Movin' On was entitled to as compensation for its losses.

Our goal in reviewing damages in the context of remittitur is to approximate as closely as possible the decision made by the jury, within the limits of a proper award. *Exxon Corp. v. Alvey*, 690 P.2d 733, 742 (Alaska 1984). The jury's decision in this case was to award treble punitive damages. Since we have determined that the maximum amount of compensatory damages sustainable by the evidence in this case is $230,217.50, we hereby order punitive damages to be reduced to three times that amount, or $690,652.50.

AFFIRMED in part and REMANDED for modification consistent with this opinion.

BURKE, J., not participating.