**Frank PLUID, Appellant/Cross–Appellee,**

**v.**

**B.K., Appellee/Cross–Appellant.**

**Nos. S–7506, S–7525.**

Supreme Court of Alaska.

Nov. 28, 1997.

---

D. Scott Dattan, Law Offices of D. Scott Dattan, Anchorage, for Appellant/Cross–Appellee.

Steven D. Smith, Law Offices of Steven D. Smith, P.C., Anchorage, for Appellee/Cross–Appellant.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

PER CURIAM.

I.  *INTRODUCTION*

Frank Pluid was found liable, after a bench trial, for committing acts of sexual battery against B.K., the child of a woman with whom Pluid lived. The judge, sitting as the finder of fact, awarded both compensatory and punitive damages. Pluid appeals on the ground that B.K. failed to present sufficient evidence to justify the trial court's award of damages for B.K.'s future medical expenses. He also argues that the award of punitive damages was excessive. B.K. cross-appeals the trial court's refusal to award damages for her past medical expenses. For the reasons that follow, we are unpersuaded by Pluid's appeal, we do not address B.K.'s cross-appeal, and we affirm.

II.  *FACTS AND PROCEEDINGS*

During January and February of 1989, B.K. was living with her mother and two brothers in Pluid's home.[1] B.K.'s mother

---

1. We state the historical facts as found by the    trial court. Neither party has contested their

and Pluid had been residing with each other for approximately five years. B.K., her mother, and her brothers moved out of Pluid's house in the latter part of February 1989.

At trial, B.K. testified that Pluid committed a sexual assault upon her when she was twelve years old. The assault consisted of Pluid taking B.K. into his bedroom and asking her if she wanted to "snuggle." He rubbed her chest and genitals and attempted to penetrate her. He was unsuccessful at penetration and masturbated on her instead. After the assault, he took steps to prevent its discovery, including instructing B.K. not to tell anyone what he had done to her. She testified that other assaults followed this first one. She was assaulted more than once and at least "a couple of times." Prior to trial, she informed the police that she had been assaulted four times.

Pluid's work was of such a nature that he was away from home for two-week periods of time, then home for one. At some point after the assaults, while Pluid was away, B.K. undertook to tell her brother what Pluid had done to her. After she started to tell him, but before she could finish, her mother overheard the conversation and intervened. B.K. told her mother the whole story. B.K.'s family moved out of Pluid's home shortly thereafter.

Pluid testified that he did not do these things. He claimed that B.K.'s allegations were the product of her mother's having instilled a false memory in her mind. Pluid posited that it was actually B.K.'s biological father who sexually assaulted her. He claimed that the true reason that B.K. and the rest of her family moved out of his house was that he had ordered them to leave. He contended that the allegations of sexual assault were retribution by B.K.'s mother for kicking out her and the family.

The trial court found B.K. credible and did not believe Pluid's denials or his vendetta hypothesis. Thus, the court found the evidence "clear and convincing" that Pluid had committed "acts of sexual battery" against B.K. Treating all of the acts of sexual battery as a single tortious event for purposes of calculating damages, the court concluded that accuracy.

the evidence showed that B.K. would need approximately one and a half years of counseling and "an average of a visit per year thereafter." The court determined that this would amount to 100 sessions with a counselor at a cost of $120 per session. Therefore, it awarded B.K. $12,000 for these future medical expenses. The court also awarded B.K. $25,000 for past and future pain and suffering.

Finally, the court found by clear and convincing evidence that Pluid acted outrageously. For this outrageous conduct, the court awarded punitive damages in the amount of five times the compensatory damages—$185,-000. The court noted that the amount exceeded the criminal fine for a single offense of sexual abuse of a minor but found this to be a reasonably proportionate penalty in light of the evidence that the conduct occurred more than once and not more than four times. Pluid moved for reconsideration of these awards and the motion was denied.

The court declined to award B.K. compensation for her past medical expenses stemming from the attacks on the ground that the evidence supporting these expenses was too vague. B.K. moved for reconsideration of this ruling and that motion was also denied. This appeal and cross-appeal followed.

## III. *STANDARD OF REVIEW*

■ The determination by a trial court sitting as a finder of fact as to the proper amount to be awarded as compensatory damages is not to be disturbed on appeal unless it is clearly erroneous. *Morrison v. State,* 516 P.2d 402, 405 (Alaska 1973). So long as the trial judge "follows the correct rules of law, and his estimation appears reasonable and is grounded upon the evidence, his finding will remain undisturbed." *Id.*

■ We will overturn an award of punitive damages entered by a court sitting as the trier of fact only if it is manifestly unreasonable, the result of passion or prejudice, or entered in disregard of rules of law. *See Alaska Statebank v. Fairco,* 674 P.2d 288, 296 (Alaska 1983).

We review questions of law using our independent judgment. *Langdon v. Champion*, 752 P.2d 999, 1001 (Alaska 1988). Under this standard, we have the duty "to adopt the rule of law that is most persuasive in light of precedent, reason and policy." *Id.* (quoting *Brooks v. Brooks*, 733 P.2d 1044, 1055 (Alaska 1987)).

## IV. ANALYSIS AND DISCUSSION

### A. Did the Trial Court Err in Awarding B.K. $12,000 for Future Medical Expenses?

Pluid argues that the trial court erred in its determination of the amount to be awarded for B.K.'s future medical expenses. The trial court found that B.K.'s expenses would amount to $12,000, based on its conclusion that she would require weekly counseling sessions for a year and a half and yearly sessions thereafter for a total of 100 sessions of therapy. The court estimated that each session would cost $120.

Pluid contends that B.K. failed to show by a preponderance of the evidence that she would require this amount of therapy. This may be true.[2] However, Pluid has misconceived the quantum of evidence necessary to support an award of damages. It is, of course, the law that the *fact* of damages must be proven by a preponderance of the evidence. "To recover for future medical expenses one must prove to a reasonable probability that they will occur." *Blumenshine v. Baptiste*, 869 P.2d 470, 473 (Alaska 1994) (citing *Maddocks v. Bennett*, 456 P.2d 453, 458 (Alaska 1969)). Once the fact of damages has been proven to a reasonable probability, the *amount* of such damages, on the other hand, need only be proven to such a degree as to allow the finder of fact to "reasonably estimate the amount to be allowed for [the] item [of damages]." *Id.* (citing *Henderson v. Breesman*, 77 Ariz. 256, 269 P.2d 1059, 1061–62 (1954)). The point

was stated clearly by our opinion in *Morrison v. State:*

> Certainly in many cases, as is true in this case, some items of damage cannot be fixed with mathematical precision. In those instances the trial judge is necessarily forced to estimate and as long as he follows the correct rules of law, and his estimation appears reasonable and is grounded upon the evidence, his finding will remain undisturbed.

516 P.2d at 405.

At trial, evidence was presented that a counseling session costs between $100 and $150. These figures, coupled with the expert's estimation of the number of counseling sessions B.K. will need to attend, provided a reasonable basis for estimating the amount of damages for B.K.'s future medical expenses. Furthermore, $12,000 is a reasonable estimation, given the above evidence, of the amount of B.K.'s future medical expenses. The trial judge did not commit clear error.

### B. Did the Trial Court Err in Awarding $185,000 in Punitive Damages?

#### 1. Was the punitive damages award excessive?

A punitive damage award is excessive if it is manifestly unreasonable, resulting from passion or prejudice or disregard of the rules of law. Relevant factors include the compensatory damage amount, magnitude of the offense, importance of the policy violated, and the defendant's wealth.

*Alaskan Village, Inc. v. Smalley*, 720 P.2d 945, 949 (Alaska 1986) (citations omitted). Pluid next argues that the punitive damages award is excessive because it was based on passion or prejudice on the part of the trial judge. He finds evidence of this passion or prejudice in the ratio of punitive damages to compensatory damages. The award of punitive damages was five times that of compensatory damages.[3] Pluid recognizes, and this

---

2. The expert at trial testified:
I believe that she [B.K.] would in all likelihood require probably another year [of weekly counseling sessions].
That does not mean that she would need to continue to meet at the same frequency that she has been meeting. That year is an estimate. It could be longer, a year and a half. . . .

3. Again, the compensatory damages awarded were $12,000 for future medical expenses and $25,000 for past and future pain and suffering for a total of $37,000. $37,000 × 5 = $185,000, the amount of the punitive damages award.

court has often stated, that "[s]imply pointing to the ratio does not establish excessiveness." *Alaska Ins. Co. v. Movin' On Constr., Inc.,* 718 P.2d 472, 475 (Alaska 1986). The ratio between compensatory and punitive damages is merely a factor to be taken into account and we have never laid out a definitive permissible ratio. *Id.* There may be cases in which the comparison is of no use in making a determination as to excessiveness. *Clary Ins. Agency v. Doyle,* 620 P.2d 194, 205 (Alaska 1980).

To bolster his claim of passion or prejudice, Pluid points to the fact that in making its punitive damage award the trial court referred to criminal penalties. He also points to the court's "obvious disappointment" that certain damaging evidence was inadmissible. He argues that these factors, coupled with the ratio, show impermissible motive on the part of the judge.

■ In its findings and conclusions, the superior court wrote:

> [T]his amount [of punitive damages] exceeds the criminal fine for a single offense of sexual abuse of a minor in the first degree under the present law and [the court] finds this to be reasonably proportionate as a penalty in light of the evidence that the conduct occurred more than once and not more than four times.

Pluid argues that he "was never convicted of sexual abuse of a minor in any degree for this incident, and therefore reference to criminal penalties is inappropriate and evidence of prejudice on the part of the Superior Court." The superior court did not err in taking the criminal penalty into account when calculating punitive damages. The court's reference to criminal penalties does not indicate passion or prejudice.

During trial, the plaintiff attempted to introduce evidence that Pluid made sexual advances toward a former babysitter. Pluid objected and B.K. made the offer of proof that the testimony would fit an exception to the evidence rules against character evidence. The babysitter was allowed to testify, but the testimony failed to "fit" the excep-

tion. In its findings and conclusions, the superior court wrote:

> While the rule [Evidence Rule 404(b)(2) ] is designed for criminal prosecution—the most commonly found circumstance in which the problem arises—the facts and the proof problems surrounding this civil prosecution for what would be a crime if criminally prosecuted call for the application of the same kind of common sense rule. Unfortunately, analysis of [the babysitter's] testimony demonstrates that even if believed, that it fails to meet the criteria of the exception.... Thus, the court, in effect, sustains the defendant's objection after the fact, and gives [the babysitter's] testimony no weight.

Pluid argues that the trial court's "obvious disappointment that [the babysitter's] testimony was inadmissible, clearly indicate[s] that the lower court was influenced by passion or prejudice in rendering its judgment." We find, to the contrary, no sign that the trial court was influenced by the inadmissible evidence. In fact, the trial court appears to have given the testimony no weight. In effect, Pluid asks us to find that the trial court was being disingenuous when it stated that it would disregard the evidence and this we decline to do.

In sum, the ratio of punitive damages to compensatory damages, the reference to criminal penalties, and the reference to the inadmissible testimony do not, individually or taken as a whole, show passion or prejudice on the part of the trial court in making the punitive damages award. On the other hand, the magnitude of Pluid's offense and the importance of the public policy violated both strongly show that the punitive damages award is not excessive. Pluid was found, by clear and convincing evidence, to have sexually assaulted, two to four times, a child living in his home.[4]

### 2. Does the lack of evidence on Pluid's wealth undermine the award?

■ Lastly, Pluid argues that the punitive damages award is excessive as a matter

---

4. Because we uphold the trial court's award of compensatory damages we do not address Pluid's argument that the punitive damages award should be decreased in proportion to any decrease in the award of compensatory damages.

of law because B.K. did not put on evidence of Pluid's net worth at trial. The wealth of the defendant is one factor to be taken into account in determining whether an award of punitive damages was excessive. *Alaskan Village,* 720 P.2d at 949.

There is a split in authority among the courts of other states as to whether evidence of the defendant's wealth must be introduced in order for a punitive damages award to be upheld.

In *Bundy v. Century Equipment Co.,* 692 P.2d 754 (Utah 1984), the court held a punitive damages award to be excessive as a matter of law in the absence of any evidence regarding the defendant's assets or net worth. *Id.* at 759. The court reasoned that, because the main purpose of punitive damages is to punish the defendant, there must be net worth evidence before a judgment can be made as to whether that punishment was excessive as to that particular defendant. "Punitive damages should be more than an inconvenience.... Their amount should be sufficient to discourage [the defendant], or anyone similarly situated, from repeating such conduct in the future." *Id.*

Other courts confronting the issue have placed responsibility for presenting net worth evidence on the defendant himself. In *Hicks v. Lilly Enterprises, Inc.,* 45 Or.App. 211, 608 P.2d 186 (1980), the Oregon court said:

> While the wealth of defendant is a relevant inquiry on the issue of punitive damages, it is not a necessary element. The evidence is relevant to allow the jury to assess punitive damages in an amount which would constitute a penalty in relation to defendant's wealth. The evidence can enure to the benefit of either party. If defendant's wealth is minimal, the jury may conclude a small assessment of punitive damages would properly penalize defendant. Conversely, if defendant's wealth is substantial, the jury may be convinced that a larger award is necessary. A defendant which presents no evidence of its financial worth cannot complain the jury did not have such evidence.

*Id.,* 608 P.2d at 189 (citations omitted); *see also Romero v. Hariri,* 80 Hawai'i 450, 911 P.2d 85, 93 (Haw.App.1996) (concluding that

the failure to show net worth does not necessarily invalidate a punitive award but only eliminates a factor with which to gauge the reasonableness of the award); *Rogers v. Florence Printing Co.,* 233 S.C. 567, 106 S.E.2d 258, 262 (1958) (noting that the defendant "should not be heard to complain that the jury made its award without such [net worth] information, where he himself testified and did not offer it").

██ We find the Oregon method preferable to that of the Utah courts. The defendant is uniquely situated to put on evidence of his own net worth. He may choose not to do so if he concludes that it would not be to his benefit. If a defendant with a small net worth is before the court, he may make sure that the finder of fact is aware of his financial situation. A defendant who does not put on evidence of his own net worth cannot, later, complain of its absence. We reject Pluid's argument on this point as well.

C. *The Cross–Appeal: Did the Trial Court Err When it Refused to Award Damages for B.K.'s Past Medical Expenses?*

B.K. cross-appealed claiming that the trial court should have awarded her damages for her past medical expenses. However, the cross-appeal is asserted contingently. It is to be considered only if the case is remanded on appeal. Since we affirm, we do not address the cross-appeal.

V. *CONCLUSION*

AFFIRMED.