**Michael Damian BRANDNER, Appellant,**

v.

**Virginia Louise HUDSON and James Arthur Hudson, Appellees.**

No. S–12214.

Supreme Court of Alaska.

Nov. 9, 2007.

**50.** *See, e.g.,* 1 ROBERT D. SACK, SACK ON DEFAMATION: LIBEL, SLANDER, AND RELATED PROBLEMS § 6.1 (3d ed.2007).

**51.** 992 P.2d 1111, 1115 (Alaska 1999).

**52.** *See Gay v. Williams,* 486 F.Supp. 12, 16 (D.Alaska 1979) (interpreting Alaska law).

Matthew K. Peterson and Monique R. Renner, Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC, Anchorage, for Appellant.

Charles M. Merriner, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Virginia Hudson sued Dr. Michael Brandner for negligence and assault based on an encounter in July 2002 that occurred at Alaska Regional Hospital, where both Hudson and Dr. Brandner worked. Hudson sought compensatory and punitive damages, claiming that a knee injury and emotional distress resulted from an incident in which Dr. Brandner dragged her down a hallway and pushed her into her office chair. After a bench trial, the trial court awarded Hudson $90,828 in compensatory damages and $25,000 in punitive damages. Dr. Brandner appeals the court's damages awards and its decision to admit records of domestic violence petitions filed against Dr. Brandner by his wife. Because any error in admitting the domestic violence petitions was harmless error, we affirm the decision of the trial court. Because the compensatory damages award is not clearly erroneous, and because clear and convincing evidence supports the punitive damages award, we affirm the trial court's damages awards.

## II. FACTS AND PROCEEDINGS

In 2002 Virginia Hudson and Dr. Michael Brandner were both employed at Alaska Regional Hospital. Hudson's duties included scheduling surgeries. Dr. Brandner was employed as a surgeon at the hospital. On the morning of July 5, 2002, Hudson received a note that Dr. Brandner was upset with her regarding the schedule. Hudson testified that later that day, she encountered Dr. Brandner in the hallway and said, "I heard you were upset." Hudson testified that in response, Dr. Brandner grabbed her arm and dragged Hudson down the hall to her office. When they entered the office, Dr. Brandner pushed Hudson into her chair. As she was pushed, Hudson's foot was tangled in the chair, and she twisted her knee. Dr. Brandner then left Hudson's office. Immediately after the incident, Hudson showed a coworker her arm, which was red, and told her what happened. On the following Monday, Hudson returned to work and filed an incident report with her supervisor. Hudson then went to the emergency room and reported the incident to the police. Dr. Brandner was given a deferred prosecution.[1] Over the next several months, Hudson experienced

pain in her knee and ultimately required surgery. In addition, Hudson suffered emotional distress and sought counseling and medication.

Hudson sued Dr. Brandner, claiming assault, negligence, and civil rights violations, and seeking compensatory and punitive damages. Hudson's husband sued for loss of consortium. Superior Court Judge John Suddock conducted a two-day bench trial. During the trial, over Dr. Brandner's objection, the trial court admitted Hudson's testimony about records she discovered of domestic violence petitions filed against Dr. Brandner. The court admitted the testimony and the records for the limited purpose of proving Hudson's state of mind after the incident.

At the conclusion of the trial, Judge Suddock found in favor of the Hudsons. Judge Suddock found that Dr. Brandner was negligent and had committed civil battery. He awarded the Hudsons $90,828 in damages, including approximately $15,000 in medical expenses and lost wages; $25,000 in pain and suffering; and $50,000 for emotional distress. In addition, the trial court initially indicated that $50,000 in punitive damages was appropriate. The court later reduced the punitive damages award to $25,000.[2]

Dr. Brandner appeals. Dr. Brandner challenges the trial court's decision to admit his domestic violence records, asserting that the records were irrelevant and unduly prejudicial. Dr. Brandner also challenges the court's award of compensatory damages for emotional distress, claiming that Hudson's emotional distress was extreme and unusual and that it was not caused by his actions. Finally, Dr. Brandner challenges the punitive damages award, claiming it is not supported by clear and convincing evidence and asserting that the trial court's award was the product of passion or prejudice.

2. The court explained that after consideration, it decided that $50,000 was "excessive under the circumstances" and that $25,000 "is a sum that still carries with it considerable force, but that is more proportionate to the wrong that was committed."

3. *Glover v. Glover*, 92 P.3d 387, 391 (Alaska 2004).

## III. STANDARD OF REVIEW

We review the trial court's decision to admit evidence for an abuse of discretion.[3] We will overturn a trial court's award of compensatory damages only if it is clearly erroneous.[4] As long as the trial court followed "the correct rules of law, and [its] estimation appears reasonable and is grounded upon the evidence, [its] finding will remain undisturbed."[5] We will overturn a trial court's award of punitive damages after a bench trial "only if it is manifestly unreasonable, the result of passion or prejudice, or entered in disregard of rules of law."[6]

## IV. DISCUSSION

### A. Any Error in Admitting Dr. Brandner's Domestic Violence Records into Evidence Was Harmless Error.

During the trial, Hudson testified that when the police interviewed her on the day of the incident, they told her to check Dr. Brandner's record for domestic violence. She also testified that a nurse at the hospital advised her to check Dr. Brandner's courthouse records. The trial judge allowed Hudson's testimony that she reviewed and copied records from which she concluded that Dr. Brandner had been abusive to his wife.

> I know that he jerked the phone out of the wall. I know that he stalked her. I know his kids had stepped in between him and his wife.
>
> And what I read, he is violent. And because of reading that, I wasn't real sure what he was capable of doing to me. I'm not even related to him.

The trial judge overruled Dr. Brandner's objection that the testimony was hearsay, admitting it as evidence of Hudson's state of mind. In addition to allowing the testimony, the judge also admitted the records over Dr. Brandner's objection.

4. *Pluid v. B.K.*, 948 P.2d 981, 983 (Alaska 1997).

5. *Id.* (quoting *Morrison v. State*, 516 P.2d 402, 405 (Alaska 1973)).

6. *Id.*

Dr. Brandner argues that the domestic violence records were irrelevant because they occurred four years prior to the incident with Hudson and because the petitions were dismissed. He also contends that the records were highly prejudicial.[7]

■■ To be admissible, evidence must be relevant to a material issue.[8] The trial court determined that Hudson's testimony regarding her reaction to the records was relevant to her state of mind after the assault. Dr. Brandner suggests that because Hudson did not thoroughly read the records, any distress she experienced as a result of the records was unreasonable. But it was for the trier of fact to determine whether Hudson's distress was reasonable, and the testimony was relevant to the distress Hudson experienced. As a result, the trial court's ruling that the evidence was relevant to Hudson's state of mind was not an abuse of discretion.

But Alaska Evidence Rule 403 provides that otherwise admissible evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Dr. Brandner suggests that the domestic violence records were unfairly prejudicial because they could lead a trier of fact to assume that he was guilty of the battery against Hudson.

■■ Trial courts have broad discretion in applying the Rule 403 balancing test.[9] In reviewing the trial court's decision, we balance the danger of unfair prejudice against the probative value of the evidence "to de-termine whether the potential danger predominated so greatly as to leave us firmly convinced that admitting the challenged evidence amounted to a clear abuse of discretion under Evidence Rule 403." [10] But even where the trial court errs in admitting evidence, we will reverse only if that error was not harmless.[11] A trial court's error in admitting evidence "is harmless when there is no reasonable likelihood that the admitted evidence had an appreciable effect on [the trier of fact]." [12] Dr. Brandner bears the burden of showing that prejudice resulted from the trial court's admission of the testimony and records.[13]

While this would have been a much closer and more troubling question in a jury trial, we hold that any error in admitting the records was harmless. In this case, the likelihood of unfair prejudice was greatly reduced by the fact that this was a bench trial.[14] Moreover, Judge Suddock indicated that he had not read the records, stating that the "records didn't really make very much difference" and concluding that he was "totally uninterested in [Dr. Brandner's] DV records . . . [because] the incident speaks for itself and should be judged by itself." In other words, Judge Suddock's findings explicitly state that he gave very little weight to the domestic violence records, even on the issue of Hudson's state of mind. Under these circumstances, we hold that any error in admitting the records was harmless.

## B. The Trial Court's Award of Damages for Emotional Distress Is Not Clearly Erroneous.

■■ Dr. Brandner challenges the trial court's award of $50,000 in damages for emo-

---

7. Dr. Brandner also contends that the records should have been excluded as inadmissible character evidence under Alaska Evidence Rule 404(a). This objection is without merit. The trial court did not admit the evidence as character evidence. Rather, it admitted it for the limited purpose of showing Hudson's state of mind.

8. "To be of sufficient relevance for admission, testimony, documents or other evidence must have some tendency in reason to establish a proposition material to the case." *Hutchings v. State*, 518 P.2d 767, 769 (Alaska 1974).

9. *Bluel v. State*, 153 P.3d 982, 986 (Alaska 2007).

10. *Id.* at 987.

11. *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 142 (Alaska 2004).

12. *Id.*

13. *Dobos v. Ingersoll*, 9 P.3d 1020, 1024 (Alaska 2000).

14. *See Colgan v. State*, 711 P.2d 533, 534 (Alaska App.1985) (noting that "the possibility of any actual prejudice was significantly diminished because [defendant] elected to proceed with a nonjury trial").

tional distress. Dr. Brandner notes that the trial court found Hudson's reaction to be unusual and suggests that the award was therefore erroneous. He also argues that his actions did not rise to the level of intentional infliction of emotional distress and that damages for emotional distress are therefore generally inappropriate. Dr. Brandner also contests the court's determination that he caused Hudson's emotional distress.

██ The trial court found that Hudson's injuries were unusual, but noted the "eggshell plaintiff" rule and concluded that Dr. Brandner "takes his plaintiff as he finds her." The trial court properly recognized that whether Hudson's reaction was unusual was not relevant to the issue of damages. In *Glamann v. Kirk,* we recognized that "[t]he defendant must take the victim as the defendant finds the victim and is liable for those injuries caused or aggravated by defendant's negligence." [15] While the extent of Hudson's injury may have been unusual or unpredictable, Dr. Brandner is nonetheless liable for all injuries that were either caused or aggravated by his actions.

██ Dr. Brandner's second argument, that his conduct was not outrageous, is not relevant to the issue of compensatory damages for emotional distress. He cites no authority for the proposition that emotional damages cannot accompany a battery or negligence claim, and we reject this argument.[16] Alaska Statute 09.17.010 details the boundaries of damages awards for noneconomic losses and contains no requirement that con-

duct be outrageous before an award may be made.[17]

Finally, Dr. Brandner challenges the trial court's determination that he caused Hudson's distress. Dr. Brandner notes Hudson's testimony that her review of the domestic violence records made her "very fearful of who [Dr. Brandner] is." Dr. Brandner claims that Hudson's emotional distress therefore did not arise out of the incident, but out of her review of the files. He concludes that "there is no causal connection between Ms. Hudson's exacerbated emotions and Dr. Brandner's dismissed domestic violence petitions that occurred four years earlier with Dr. Brandner's wife."

But the trial court found that the domestic violence records "didn't really make very much difference to [Hudson's] total course." Judge Suddock found that "the incident itself shattered a sense of security, a sense of the predictability of the day-to-day ... and caused [Hudson] to be a suffering person. And that suffering ... is articulated by post traumatic stress disorder." The trial court also found that "the emotional component is the most serious aspect of [Hudson's] damage.... [T]hat's a very serious Pandora's Box that was opened ... it has affected [her] and [her] whole being."

The trial court's award of damages for emotional distress is not clearly erroneous. The record supports the trial court's finding that the incident itself caused Hudson distress. Both Hudson and her husband testified that Hudson was withdrawn and troubled immediately following the incident.

**15.** 29 P.3d 255, 261 (Alaska 2001).

**16.** Even if outrageous conduct were required, Dr. Brandner's challenge would fail. As we explain in detail below, we uphold the trial court's determination that Dr. Brandner's conduct was outrageous.

**17.** AS 09.17.010 provides:
(a) In an action to recover damages for personal injury or wrongful death, all damage claims for noneconomic losses shall be limited to compensation for pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life, loss of consortium, and other nonpecuniary damage.
(b) Except as provided under (c) of this section, the damages awarded by a court or a jury

under (a) of this section for all claims, including a loss of consortium claim, arising out of a single injury or death may not exceed $400,000 or the injured person's life expectancy in years multiplied by $8,000, whichever is greater.
(c) In an action for personal injury, the damages awarded by a court or jury that are described under (b) of this section may not exceed $1,000,000 or the person's life expectancy in years multiplied by $25,000, whichever is greater, when the damages are awarded for severe permanent physical impairment or severe disfigurement.
(d) Multiple injuries sustained by one person as a result of a single incident shall be treated as a single injury for purposes of this section.

Hudson's coworker, Hazel Poff, also testified that Hudson was "very quiet and upset" immediately after the incident. Poff testified that since the day of the incident, Hudson's demeanor at work has changed significantly. Poff indicated that Hudson became "more jumpy, a little more easy to anger ... she was a lot more moody [and] ... wasn't herself at all."

The trial court's conclusion is also supported by the testimony of Dr. Anne Fleming. Dr. Fleming testified that she counseled Hudson after the incident and diagnosed her with post traumatic stress disorder. Dr. Fleming testified that Hudson experienced "symptoms of depression, symptoms of anxiety, difficulty sleeping, and continual reexperiencing of the feelings that the traumatic event brought forth...." She also testified that Hudson "suffered ... intense fear ... and helplessness because of this event." Hudson testified that, in addition to counseling, she takes medications for anxiety, depression, and insomnia—none of which she required before the incident.

In light of Dr. Fleming's testimony that Hudson suffered from post traumatic stress disorder, and testimony from Hudson, her husband, and a coworker that Hudson was upset immediately after the incident, the trial court's finding is not clearly erroneous. We therefore affirm the damages awarded for emotional distress.

## C. Clear and Convincing Evidence Supports the Court's Punitive Damages Award.

█ The trial court awarded $25,000 in punitive damages. Dr. Brandner argues the trial court applied the wrong standard of review and that clear and convincing evidence does not support the award.

█ Punitive damages serve "to punish the wrongdoer and to deter the wrongdoer and others like him from repeating the offensive act."[18] To support a claim for punitive damages, the plaintiff must show "by clear and convincing evidence that the defendant's conduct was outrageous, such as acts done with malice, bad motive, or reckless indifference to the interests of another."[19]

Dr. Brandner challenges the court's conclusion that clear and convincing evidence supports an award of punitive damages in this case. He asserts that although the trial court found an " 'intentional tort' in the limited and technical sense," the behavior at issue was not outrageous because he did not intend to physically harm Hudson and because he did not act with malice.[20]

The trial court recognized that the clear and convincing evidence standard applied.[21] It reasoned that its finding that Dr. Brandner had committed civil battery "gets one a long way[ ] along the path to ... punitive damages." The court concluded that a complaint for intentional infliction of emotional distress would have survived. The court reasoned that

[o]nce you get [ ] an employer or a person in a position of authority, actually physically moving an employee around as if she were a piece of property to be placed at his whim in a different locale, I think you

---

18. *Chizmar v. Mackie*, 896 P.2d 196, 209 (Alaska 1995) (quoting *State Farm Mut. Auto. Ins. Co. v. Weiford*, 831 P.2d 1264, 1266 (Alaska 1992)).

19. *Chizmar*, 896 P.2d at 210 (quoting *Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848, 856 (Alaska 1991)). AS 09.17.020 provides, in relevant part:

> (a) In an action in which a claim of punitive damages is presented to the fact finder, the fact finder shall determine, concurrently with all other issues presented, whether punitive damages shall be allowed by using the standards set out in (b) of this section....
> (b) The fact finder may make an award of punitive damages only if the plaintiff proves by

clear and convincing evidence that the defendant's conduct
>     (1) was outrageous, including acts done with malice or bad motives; or
>     (2) evidenced reckless indifference to the interest of another person.

20. Dr. Brandner does not challenge the trial court's finding that his actions were negligent or constituted civil battery.

21. Because the trial court explicitly noted that the clear and convincing evidence standard applied to punitive damages, we reject Dr. Brandner's argument that the trial court applied the wrong standard.

enter an entirely different ballpark. And so I am satisfied that this event was unjustified enough, outrageous enough, entailed enough indifference to Ms. Hudson's interest[ ] ... [that] [i]t justifies an award of punitive damages.

In its written order, the court stated that there was "clear and convincing evidence that Dr. Brandner's conduct was highly egregious and reckless."

We conclude that clear and convincing evidence supports the trial court's determination. Hudson testified that:

[Dr. Brandner] grabbed me by the arm and [dragged] me down the hall and not only did it hurt, my arm was hurting so bad I thought it was going to fall off, it embarrassed me to death to think that I would be treated that way when I had worked there that many years and had been treated with [the] utmost respect. . . . All I said was his name. I couldn't understand why he was dragging me. . . . He back[ed] through the door [to the office], pulling me through the door and then escorting me to my office. . . . He shoved me in the chair. My foot got tangled up in my office chair and when he turned me, it twisted my knee.

The trial court found Hudson to be credible. Her testimony, along with the corroborating testimony offered by her coworkers, supports the court's finding that Dr. Brandner committed civil battery, as well as its conclusion that a claim for intentional infliction of emotional distress would have survived.

The trial court's finding that Dr. Brandner's behavior was outrageous was also based on the disparity in power between Hudson and Dr. Brandner. As the trial court discussed, Dr. Brandner was "in a position of authority in [the] hospital," whereas Hudson was a member of the clerical staff. The trial court found that in light of their disparate status, Dr. Brandner's gratuitous manhandling of Hudson was outrageous and merited an award of punitive damages. Moreover, because we have held that the test for punitive damages is analogous to the test for intentional infliction of emotional distress, the trial court's conclusion that a claim for IIED would have survived further supports the award of punitive damages.[22] Finally, the trial court's determination that the conduct was outrageous is supported by the fact that Dr. Brandner's conduct led to a criminal charge of assault and battery, on which he received a deferred prosecution.[23] In sum, clear and convincing evidence supports the trial court's determination that Dr. Brandner's action was outrageous.

#### D. The Punitive Damages Award Is Not the Product of Passion or Prejudice.

■ Dr. Brandner argues that the punitive damages award was the result of passion or prejudice, contending that the trial court's reduction in the award from $50,000 at the conclusion of the trial to $25,000 in his written order is evidence that the court was influenced by passion.[24] Dr. Brandner also maintains that the trial court improperly based the punitive award on "personalized analogy" and that the trial court's "personal feelings . . . shadowed the decision."

22. *Fyffe v. Wright*, 93 P.3d 444, 455 (Alaska 2004) (noting that the sort of conduct that must be established to recover on a claim of intentional infliction of emotional distress is similar to that required to recover punitive damages).

23. Dr. Brandner also contends that he did not act with reckless indifference. But AS 09.17.020(b)(1)-(2) provides for punitive damages where conduct is outrageous *or* evidences reckless indifference. Because we affirm the trial court's determination that Dr. Brandner's conduct was outrageous, we need not reach Dr. Brandner's argument that he did not act with reckless indifference.

24. We reject Hudson's argument that Dr. Brandner waived this issue by failing to adequately brief the argument, failing to include it in his points on appeal, and failing to raise it before the trial court. Although Dr. Brandner does not use the phrase "passion or prejudice" in his points on appeal, two of those points do challenge the superior court's punitive damages award. And Dr. Brandner's briefing on the issue of passion or prejudice is coherent and supported by authority. Moreover, because he appeals the final judgment itself, there is no requirement that this issue have been raised below. *See* Alaska R.App. P. 202 (providing that appeal may be taken from final judgment).

We reject this argument. Nothing in the trial court's rulings suggests passion or prejudice. Contrary to Dr. Brandner's allegation of passion or prejudice, the trial court's willingness to reduce the punitive damages award from $50,000 at the conclusion of trial to $25,000 at the time of the written order demonstrates its deliberate reflection and concern for fairness.[25] Moreover, the trial court's thoughtful and carefully written order belies the notion that it was influenced by passion or prejudice.

We also reject Dr. Brandner's argument that the trial court's use of reasoning by analogy reflected prejudice. Rather, the court simply used analogy to explain its finding that the battery constituted outrageous behavior. The use of analogy again reflects the considerable thought and care with which the trial court issued its decision. Because the trial court's punitive damages award reflects a thoughtful, balanced consideration of the issues, we reject Dr. Brandner's argument that it was the product of passion or prejudice. We therefore affirm the award of punitive damages.

## V. CONCLUSION

Because any error in admitting Dr. Brandner's domestic violence records was harmless error, and because the trial court did not err in its award of damages, we AFFIRM the decision of the trial court in all respects.

25. The written order explained the reduction as follows:

This court believes that the tentatively announced punitive damage award of $50,000 is excessive under all the circumstances. The court instead awards $25,000 for punitive damages. That is a sum that still carries with it considerable force, but that is more proportionate to the wrong that was committed.