*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TRACY SAMPSON, | ) | |
| | ) | Supreme Court No. S-17211 |
| Appellant, | ) | |
| | ) | Superior Court No. 2KB-16-00048 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ALASKA AIRLINES, INC., | ) | |
| | ) | No. 7470 – July 24, 2020 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Kotzebue, Paul A. Roetman, Judge.

Appearances: Robert Campbell, Caliber Law Group, Utqiaġvik, for Appellant. Susan Orlansky, Reeves Amodio LLC, and Jeffrey M. Feldman, Summit Law Group, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

STOWERS, Justice.

## I.    INTRODUCTION

A woman who slipped and fell on ice outside the Alaska Airlines terminal at the Kotzebue Airport sustained serious injury and brought suit against the airline. At the end of the trial, the jury found Alaska Airlines liable and awarded the woman substantial damages. The woman appeals, arguing that the special verdict form contradicted the jury instructions. Because the verdict form was not plainly erroneous, we affirm.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In April 2015 Tracy Sampson was at the Kotzebue Airport, en route from Anchorage to her home in Selawik. She was walking from the Alaska Airlines terminal to the Bering Air terminal when she slipped and fell on ice. Paramedics brought her to the hospital emergency room. Medical staff took X-rays and told Sampson that she had fractured her kneecap and needed to go to Anchorage for surgery. Medical staff at the Alaska Native Medical Center in Anchorage informed Sampson that half of her kneecap was fractured and half was shattered. They subsequently performed surgery. After surgery, her knee was put in an immobilizer and a cast. She traveled back to Selawik around a week later and was bedridden for about two months.

Sampson also claimed to have injured her elbow and back in the fall. She bruised her elbow, but it recovered completely. The connection between her back injuries and the fall was disputed, as Sampson had back pain prior to the fall. She claimed the pain got much worse after the fall, but she did not realize this until she became mobile two months after surgery. Prior to the fall, no doctor had recommended that she have surgery for her back pain. After her fall, she had back surgery.

The injuries affected Sampson's way of life. She was married, a mother of five, a grandmother of one, and a "full-time subsistence mom." Prior to the fall, she participated in substantial subsistence activities, and she completed much of the housework. She also sewed, spent time with her family, and enjoyed outdoor activities. After the fall, she could engage in only about half of her previous subsistence activities and had trouble with housework and sewing. The injuries also made it more difficult for her to engage in fun outdoor activities as well as basic life activities such as using the bathroom and picking up her grandson.

Sampson claimed that the ice patch where she fell had not been sanded and that Alaska Airlines could have prevented her injury by putting "[a] cup of sand or kitty litter" on the ice. Alaska Airlines denied not having sanded the area where Sampson fell.

**B.      Proceedings**

Sampson filed a complaint against Alaska Airlines. She claimed that there was "an un-sanded and/or un-salted unnatural accumulation of ice and snow that created an unreasonably dangerous condition existing on the premises of which [Alaska Airlines] . . . knew or should have known and of which [Alaska Airlines] had a reasonable opportunity to inspect and repair." She alleged that Alaska Airlines was negligent and breached its duty of care; she claimed damages in excess of $100,000. In its answer, Alaska Airlines denied breaching any legal duty to Sampson and raised a number of affirmative defenses, including comparative negligence. The case went to trial.

The jury instructions were the product of a long process. Both Alaska Airlines and Sampson filed proposed jury instructions and special verdict forms. Alaska Airlines later filed a joint set of jury instructions, which included a lengthy list of Alaska Civil Pattern Jury Instructions and stated that the parties "agreed to the jury instructions proposed by Alaska Airlines, other than proposed instruction number 26 and [the] Alaska Airlines proposed jury verdict form." A few weeks later the court gave the parties a draft of the jury instructions and special verdict form for review. The jury instruction on non-economic losses stated:

> The fourth item of loss claimed by the plaintiff is for non-economic losses. You may award the plaintiff a fair amount to compensate the plaintiff for pain and suffering, loss of enjoyment of life, physical impairment, and inconvenience resulting from the injury. Such an award should fairly compensate the plaintiff for the non-economic losses . . . that she is reasonably probable to experience in the future. In deciding how long the plaintiff may experience

such losses in the future, you may need to consider her current life expectancy.

The question on the special verdict form about future non-economic losses read: "Has Tracy Sampson proven to a reasonable degree of certainty that she will incur non-economic losses in the future as a result of the April 24, 2015 accident?"

The judge and attorneys discussed the jury instructions and special verdict form. Neither party objected to the jury instruction about non-economic damages or the special verdict form question about future non-economic damages. In fact, when asked about the verdict form question on non-economic damages, Sampson's attorney responded, "That's good." The court read the instructions to the jury. With respect to future non-economic losses, the court told the jurors that "an award should fairly compensate [Sampson] for . . . non-economic losses that she is reasonably probable to experience in the future." The case was submitted to the jury and it began deliberations.

The jury found that Alaska Airlines did not act with reasonable care in maintaining its property in a reasonably safe condition, and its failure to do so was a substantial factor in causing Sampson's damages. The jury also found that Sampson did not act with reasonable care to avoid injury to herself, and that this was also a substantial factor in causing Sampson's damages. The jury determined that Alaska Airlines was 75% at fault and Sampson was 25% at fault.

The jury determined the accident was a substantial factor in causing economic damages for necessary medical care in the amount of $36,747 (the total amount claimed for the knee injury). The jury determined the accident was a substantial factor in causing $22,402 in past non-market losses,[1] but Sampson had not proved to a reasonable degree of certainty that she would incur future non-market losses. The jury determined the accident was a substantial factor in causing $17,327.80 in past economic

---

[1] This claim covered Sampson's "work around the home."

subsistence value, and Sampson had proven to a reasonable degree of certainty that she would incur $64,820 in future subsistence losses. Finally, with respect to non-economic damages, the jury determined that the accident was a substantial factor in causing past non-economic damages of $17,327 but that Sampson had not proven to a reasonable degree of certainty that she would incur future non-economic losses.

The court entered final judgment against Alaska Airlines in the amount of $125,850.76.[2] Sampson appeals only the failure to award future non-economic damages.

## III.   STANDARD OF REVIEW

"We review jury instructions de novo when a timely objection is made. Without a timely objection, we will only review instructions for plain error. A special verdict form is a type of jury instruction subject to the same standard of review."[3] "Plain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[4]

## IV.   DISCUSSION

### A.   The Jury Instructions Were Not Plainly Erroneous.

Sampson argues that the special verdict form contradicted the jury instructions regarding future non-economic damages. The jury instructions directed the jury to award future non-economic damages that are "reasonably probable" to occur. The verdict form asked if Sampson had proven to a "reasonable degree of certainty" that

---

[2]     This was the sum of the principal of $118,967.85 plus prejudgment interest.

[3]     *Cummins, Inc. v. Nelson*, 115 P.3d 536, 541 (Alaska 2005) (footnotes omitted).

[4]     *Baker v. Ryan Air, Inc.*, 345 P.3d 101, 109 (Alaska 2015) (quoting *Sosa v. State*, 4 P.3d 951, 953 (Alaska 2000)).

she would incur future non-economic losses.[5]   Sampson asserts that "reasonably probable" is the correct burden  and that the special verdict form "created a higher, more demanding, standard." While acknowledging that this court "has occasionally mixed the terms," she claims the terms are "clearly different" such that "any reasonable jury would assume that they are, in fact, different in meaning."  Alaska Airlines asserts that these two phrases are "legally synonymous, different words that declare the same standard."

We have used both "reasonably probable"[6] and "reasonably certain"[7] in stating the standard for proving future damages.  In *Blumenshine v. Baptiste* we used the terms "reasonable probability" and "reasonable certainty" interchangeably when discussing damages for future medical expenses.[8]  In *Sherbahn v. Kerkove* we stated, "To recover for future medical expenses one must prove to a reasonable probability that they will occur."[9]   We further noted, "In *Blumenshine*, we used the terms 'reasonable certainty' and 'reasonable probability' interchangeably. Although 'reasonable certainty' sounds more demanding than 'reasonable probability,' it is intended to have an identical meaning."[10]   We have also equated the two terms in the context of medical expert

---

[5]      The other two categories of future damages — economic damages for non-market activities and subsistence activities — also had this conflict in language between the jury instructions and the special verdict form, but Sampson does not raise these discrepancies on appeal.

[6]      *See, e.g.*, *Alexander v. State, Dep't of Corr.*, 221 P.3d 321, 327 (Alaska 2009); *Jensen v. Goresen*, 881 P.2d 1119, 1126-27 (Alaska 1994).

[7]      *See, e.g.*, *Small v. Sayre*, 384 P.3d 785, 789 (Alaska 2016).

[8]      869 P.2d 470, 473 (Alaska 1994).

[9]      987 P.2d 195, 198 (Alaska 1999) (quoting *Pluid v. B.K.*, 948 P.2d 981, 984 (Alaska 1997)).

[10]      *Id.* at 199 n.12.

opinion, stating that "a medical expert's opinion must be within a 'reasonable medical certainty' or the equivalent 'reasonable medical probability' to be admissible."[11]

Sampson concedes she did not object to the verdict form before the superior court, and therefore the plain error standard applies. This concession is well taken, as Sampson not only did not object, but affirmatively agreed to the now-challenged question on the verdict form. Plain error is "found where 'an obvious mistake exists such that the jury instruction creates "a high likelihood that the jury will follow an erroneous theory resulting in a miscarriage of justice." ' "[12] In view of our prior case law, the inconsistency in the terms was not an obvious mistake and therefore not plain error.

We recognize there is a theoretically plausible potential for confusion between the two terms, as recognized by other states[13] and our own Committee on Pattern Jury Instructions (Committee), which used the term "reasonably probable" in describing the standard for future damages in the Alaska Civil Pattern Jury Instructions[14] because it recognized the use of "reasonably certain" could potentially create

---

[11] *Marron v. Stromstad*, 123 P.3d 992, 1008 (Alaska 2005) (citing *Maddocks v. Bennett*, 456 P.2d 453, 457-58 (Alaska 1969)).

[12] *Barrett v. Era Aviation, Inc.*, 996 P.2d 101, 105 (Alaska 2000) (quoting *Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 153 (Alaska 1992)).

[13] *See generally* C.S. Wheatley, Jr., Annotation, *Future Pain and Suffering as Element of Damages for Physical Injury*, 81 A.L.R. 423, Westlaw (database updated June 2020) (summarizing which states use which standard).

[14] Alaska Civ. Pattern Jury Instructions 20.01A (Introductory Instruction; Liability Contested), 20.01B (Introductory Instruction: Liability Admitted), 20.02B (Future Medical Expenses), 20.04 (Loss Of Future Earning Capacity), 20.06 (Non-Economic Losses), 20.10 (Future Damages No Reduction To Present Value).

confusion.[15] We believe the Committee was wise in its judgment and would welcome further direction for the trial courts from the Committee on this question.

## V. CONCLUSION

We AFFIRM the jury award.

---

[15] Alaska Civ. Pattern Jury Instructions 20.02B cmt. ("The Committee has used the term 'reasonably probable' in order to avoid confusing the jury."), 20.04 cmt. (same).