[Civ. No. 10504. First Appellate District, Division Two.—May 14, 1937.]

HY–LO UNIT & METAL PRODUCTS COMPANY (a Corporation), Respondent, v. EPPA H. RYON et al., Appellants.

D. P. Hatch and W. C. Petchner for Appellants.

Charles C. Montgomery for Respondent.

SPENCE, J.—Plaintiff brought this action seeking to set aside certain transfers of personal property and certain judicial proceedings including an execution sale upon the ground that said transfers were made and that said proceedings were taken with the intent to delay and defraud plaintiff as a judgment creditor of defendant Standard Gas Company. The cause was tried by the court sitting without a jury and from a judgment in favor of plaintiff, defendants appeal.

There were three corporations involved in the transactions out of which this controversy arose, two of which corporations were named as defendants herein.

Standard Gas Valve Company, one of the defendants, was the original judgment debtor. It was a so-called family corporation in which all of the stock was owned by the Ryon family. Defendant Eppa H. Ryon was the president and a director, and his son, defendant Tracy B. Ryon, was also a director thereof.

Remote Control Valve & Manufacturing Company, a corporation, is not a defendant in this action. It was a competitor of defendant Standard Gas Valve Company and in 1933, said corporations entered into an arrangement whereby a new corporation was to be organized and practically all of the assets of both of the existing corporations were to be transferred to the new corporation in exchange for stock of the new corporation.

Standard Remote Control Valve Company, one of the defendants herein, was the new corporation organized pursuant to said arrangement. Defendant Eppa H. Ryon was president and a director of this corporation, and his son, defendant Tracy B. Ryon, was a director thereof.

For the sake of clarity and brevity, we will refer to the above-mentioned corporations respectively as the debtor corporation, the second corporation and the new corporation. The arrangement between the debtor corporation and the second corporation was that both corporations would offer their assets, including tangible assets and patent rights, to the new corporation in exchange for 420 shares of its stock. This offer was not to include the bills receivable or cash of the two old corporations, but these items were comparatively small in amount. The bills payable of the two old corporations were not to be assumed by the new corporation, but

each of the two old corporations was to pay its own obligations. The assets of the debtor corporation were of a stated value of approximately $30,000 and those of the second corporation were of a stated value of approximately $22,000 for the purpose of the offer and transfer. It was agreed that these two corporations would divide the 420 shares of stock of the new corporation on the basis of 55 per cent, or 231 shares, to the debtor corporation and 45 per cent, or 189 shares, to the second corporation. The new corporation was organized, it accepted the offer above mentioned and it obtained a permit from the corporation commissioner to issue 420 shares to the old corporations. Each of the old corporations published notice of intended sale and at the time specified in the notice, bills of sale were delivered to the new corporation.

The foregoing transactions all occurred in 1933, during which time plaintiff had an action pending against the debtor corporation in the United States District Court. The master's final report was filed therein after the above-mentioned permit of the corporation commissioner had been issued. Said report found that approximately $3,000 and costs were due to plaintiff from the debtor corporation. Exceptions were filed to said report, said exceptions were subsequently overruled and judgment for approximately $3,500 was entered in favor of plaintiff and against the debtor corporation on February 28, 1934. In the meantime the directors of the debtor corporation on January 22, 1934, passed a resolution directing the new corporation to divide up the 231 shares due to the debtor corporation as follows: 100 shares to defendant Eppa H. Ryon, 50 shares to defendant Tracy B. Ryon and 81 shares to the debtor corporation. On the same day, this resolution was presented at a meeting of the board of directors of the new corporation. The last-mentioned board thereupon directed that application be made for an amended permit in order to permit the issuance of the certificates as requested by the debtor corporation. The amended permit was obtained on January 27, 1934. On February 9, 1934, the certificates were issued as requested. On February 15, 1934, defendant Eppa H. Ryon commenced an action against the debtor corporation upon alleged claims of himself and defendant Tracy B. Ryon for back salary due from the debtor corporation. In that action, the 81 shares standing in the name of the debtor corporation were attached and

thereafter the debtor corporation permitted its default to be entered. Defendant Eppa H. Ryon purchased said 81 shares of stock upon the execution sale.

It is apparent from what has been said that the result of these transactions was to strip the debtor corporation of its assets and to place all of the stock of the new corporation, for which the assets of the debtor corporation had been exchanged, into the hands of defendants Eppa H. Ryon and Tracy B. Ryon. It is further apparent that during all times mentioned, the debtor corporation and the new corporation were controlled by said defendants Eppa H. Ryon and Tracy B. Ryon, and that these last-mentioned defendants, as officers of the debtor corporation permitted the default of the debtor corporation to be taken in the action brought by Eppa H. Ryon upon the alleged salary claims of said officers. After plaintiff had caused execution to be issued in his action against the debtor corporation, said execution was returned unsatisfied and plaintiff commenced this action.

The trial court found and concluded that the original transaction whereby the debtor corporation agreed to transfer its assets in exchange for the stock of the new corporation was not entered into with the intent to delay or defraud the creditors of the debtor corporation and was not void. The trial court further found, however, that all of the defendants entered into a conspiracy to make certain transfers and to cause certain judicial proceedings to be taken with the intent to delay and defraud plaintiff; that pursuant to said conspiracy, defendants obtained an amended permit whereby the 150 of the 231 shares authorized to be issued to the debtor corporation were issued to defendants Eppa H. Ryon and Tracy B. Ryon; that said shares were the property of the debtor corporation and the transfer thereof as aforesaid was made for the purpose of concealing the ownership of said shares and with the intent to delay and defraud the creditors of the plaintiff corporation and particularly the plaintiff; that pursuant to said conspiracy, defendants planned a fraudulent judicial proceeding for the sole purpose of obstructing execution on plaintiff's judgment against the debtor corporation; that defendant Eppa H. Ryon "acting in the dual capacity as president and general manager of the defendant in said action brought by himself as plaintiff in said superior court, suffered himself as plaintiff to take judgment by default against the corporation of which he was

president and general manager''; that ''all of said acts as above set out were done fraudulently and pursuant to a conspiracy among the defendants to defeat and defraud the just claims of the creditors of the Standard Gas Valve Company, including this plaintiff in particular, and were done with the intention, and the result of the acts was, to obstruct the execution by this plaintiff of its judgment rendered in the United States District Court as aforesaid''; and ''that by reason of the premises, the just claims of plaintiff have been obstructed and rendered valueless, to its damage in the sum of $3544.84''.

The judgment of the trial court was that the transfers of stock to defendants Eppa H. Ryon and Tracy B. Ryon were void; that the judicial proceedings brought by Eppa H. Ryon against the debtor corporation were void and particularly the execution sale in sale proceedings; and that plaintiff was entitled to judgment against all the defendants in the sum of $3,544.84.

The main contentions of appellant on this appeal are that the amended complaint was insufficient to state a cause of action and that the evidence was insufficient to sustain a judgment in favor of respondent. We find no merit in these contentions. They are based largely upon the claim that respondent was ''a judgment creditor without a lien'', but this claim seems to be sufficiently answered in *Rossen* v. *Villanueva*, 175 Cal. 632, where the court said at page 634 [166 Pac. 1004], ''A creditor may attack a transfer as fraudulent when he has reduced his claim to judgment, and has endeavored without avail to collect the same by execution. (Citing cases.) This the plaintiff did here. He was not required to show that he had any specific lien, independent of the judgment, upon the property transferred by his debtor''. Similarly, in *Sewell* v. *Price*, 164 Cal. 265, the court said on page 270 [128 Pac. 407], in speaking of such an action, ''It is really an action for equitable relief against the obstruction caused by a transfer which hinders him in satisfying his claim by the ordinary process of law, that is to say, by an execution. If, then, he has put himself in a position to levy execution, he has done everything necessary to enable him to attack the transfer which hinders his enjoyment of his right.'' We therefore believe that both the pleading and the proof were sufficient to show that respondent was entitled

to equitable relief, for it is provided by statute in this state that ''Every transfer of property . . . made, . . . and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor . . . '' (Civ. Code, sec. 3439.)

A different question is raised, however, by appellants' contention that the amended complaint was insufficient to state a cause of action for a money judgment and that the evidence was insufficient to support the money judgment entered. In other words, appellants contend that the ''personal money judgment was improper and unwarranted by either law or facts''. In our opinion, this contention must be sustained. In an action of this kind, the remedies of the creditor are ordinarily limited to subjecting the property of the debtor to the satisfaction of the creditor's claim. (12 Cal. Jur. 1029, sec. 70.) In the present case, the property of the debtor corporation which the respondent was entitled to have subjected to the satisfaction of its claim was the 231 shares of stock in the new corporation. The transfers and judicial proceedings by which this stock came into the names of appellants Eppa H. Ryon and Tracy B. Ryon were declared void by the trial court because made and taken with the intent to delay and defraud respondent as a creditor of the debtor corporation. Respondent was therefore entitled to have said property subjected to the satisfaction of his claim, but in the absence of allegation or proof that said property was not available for that purpose, respondent was not entitled to a money judgment. (*Peter Barceloux Co.* v. *Buffum,* 61 Fed. (2d) 145, 153; *Swinford* v. *Rogers,* 23 Cal. 233, 234; 27 C. J. 855; Moore on Fraudulent Conveyances, vol. II, p. 1023, sec. 8.) There was neither allegation nor proof in the present case of any fact which would justify a money judgment against appellants under the rules stated in the foregoing authorities.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 12, 1937, and an ap-

plication by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 12, 1937.