## No. 21196.

### A. D. MILLER AND GENEVIEVE H. MILLER *v.* A. E. KAISER.
(433 P.2d 772)

Decided November 20, 1967.

EDWARD S. BARLOCK, for plaintiffs in error.

FRANCIS S. MANCINI, SIDNEY BIDERMAN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HODGES.

THE defendant in error, Kaiser, as a judgment creditor

of A. D. Miller, filed two actions in fraudulent conveyance against the Millers, who are husband and wife. These actions were consolidated for trial, and resulted in findings and judgments adverse to the Millers, who seek reversal by this writ of error.

Previous to filing these actions, Kaiser had obtained on April 8, 1960 a $30,393 judgment against one of the plaintiffs in error, A. D. Miller. This judgment was affirmed on a writ of error to this court in *Miller v. Kaiser,* 148 Colo. 510, 366 P.2d 659.

In the first action, No. 16098, Kaiser states that on April 15, 1960, the Millers conveyed without adequate consideration their family home from joint ownership to sole ownership in Mrs. Miller and that shortly thereafter the indebtedness on this property was increased. This conveyance and the increase of indebtedness, Kaiser alleged, was done with the intent to hinder, delay and defraud him in the collection of his $30,393 judgment. In his complaint, Kaiser seeks an order nullifying and cancelling the conveyance, an accounting for the amount of the increase of the home loan, a money judgment, and any other relief deemed proper by the court.

In the later filed action No. 16378, Kaiser alleged that about one month after his $30,393 judgment, A. D. Miller, caused his sole ownership business, A. D. Miller Auction Company, to be incorporated; that no stock was issued to A. D. Miller; that 10,000 shares were issued to Mrs. Miller and 10,000 shares to two other persons. It was alleged that this conveyance by A. D. Miller of his business to the corporation was done with the intent to hinder, delay and defraud Kaiser in the collection of his judgment. "Claim II" of this complaint alleges a conspiracy on the part of the Millers and others to knowingly and maliciously, connive and arrange the transfer of the auction business with the intent to defraud Kaiser and prevent him from collecting his lawful judgment. There is no allegation that

Kaiser suffered any special damages because of this alleged conspiracy nor does the transcript of the evidence reveal any proof whatsoever of such damages. Furthermore, the court's findings do not specify any such damages. "Claim II" is being disregarded, and this complaint is considered solely as a complaint in equity by a judgment creditor seeking to set aside a fraudulent conveyance.

Kaiser asks that this conveyance of the auction business be declared null and void; that the sheriff be ordered to sell the business and deposit the proceeds in the registry of the court; that a receiver be appointed to operate this business and account for the income; that actual and exemplary damages be awarded; and that other and further relief as the court may seem proper be ordered.

These actions were consolidated for trial to the court and upon conclusion of all the evidence, the court made extensive findings, the pertinent substance of which is as follows:

(1) That the transfer of title to the family home from joint ownership to sole ownership in Mrs. Miller, and the increase in indebtedness on the home in the sum of $9,050, were done with the intent to hinder, delay and defraud Kaiser in the collection of his lawful judgment; and

(2) That the incorporation of A. D. Miller's sole ownership business was a cloak used by the Millers for the purpose of placing the assets of this business beyond the reach of Kaiser; that it was without adequate consideration; that the corporate assumption of the business was done with the full knowledge of both the Millers and with the intent of hindering, delaying and defrauding Kaiser in the collection of his lawful judgment.

The trial court entered judgments declaring the conveyances of the family home and the auction business void and ordered that both be sold at public auction by the sheriff with the proceeds to be deposited in the

registry of the court for distribution as specified by the court.

Also, in Case No. 16098 involving the family home, the court entered judgment for Kaiser against the Millers for $4,525. This amount is one-half of the amount of the increase of indebtedness on the family home. In the same case, the judgment for $1,000 as exemplary damages was awarded Kaiser against both the Millers.

In Case No. 16378 involving the auction business, the court awarded judgment for damages in the amount of $1,296 and exemplary damages in the sum of $500 against the Millers.

■ In support of reversal, the Millers contend that the trial court erred in finding that the conveyance of the auction business was fraudulent. The record amply supports the court's finding in this regard and its judgment. We therefore uphold these findings, the judgment voiding this conveyance as to Kaiser, and the supporting orders directing the sale by the sheriff.

■ The contention of the Millers, that the court erred in ordering the sale of the family home because no judgment lien had been placed against this property, is totally without merit. The record clearly shows the recording in Arapahoe County on June 28, 1960 of a transcript of the docket entry of Kaiser's judgment against A. D. Miller.

In their remaining assignments of error, the Millers aver that the court erred in awarding judgments for money damages and exemplary damages in both cases. Because of the nature of a fraudulent conveyance action, these assignments of error bring into focus certain equitable concepts which must be applied to the facts of the case before us in making a determination of whether money damages, either actual or punitive, may be properly awarded.

I.

■■ The primary remedy in an action for fraudulent conveyance is a declaration that the fraudulent

conveyance is void as to the judgment creditor. In other words, the remedy sought is to return the property fraudulently conveyed to its prior status of ownership thereby bringing it within reach of the judgment creditor of the fraudulent transferor. In Colorado, this equitable remedy is defined in C.R.S. 1963, 59-1-17. As is true of such statutes in most states, our statutory provision does little more, if anything, than to restate the common law. The exigencies of any particular case may vary the form of the relief but it always must be limited to the substance of the remedy itself which is to place the judgment creditor in the same or similar position he held with respect to the fraudulent transferor prior to the fraudulent conveyance.

For obvious reasons, where a single action is brought to establish a claim, upon which no prior judgment has been entered, and to seek also the equitable relief of subjecting fraudulently conveyed property to the claim, a personal judgment would be proper, because it would be then in aid of that judgment that the court would set aside a fraudulent conveyance. This, however, is clearly not applicable to the facts of the case at bar which involves a judgment creditor seeking and securing *the equitable remedy alone* of voiding two fraudulent conveyances.

In both cases before us, the equitable remedy was ordered by the trial court in aid of the collection of the judgment debt against the fraudulent transferor. Implicit in this remedy is a bar to any money judgments against the fraudulent transferor. This general rule is well expressed in *Wright v. Salzberger,* 121 Cal. App. 639, 9 P.2d 860. Also see 37 C.J.S. *Fraudulent Conveyances* § 444 under the heading "Personal Judgment — Against Grantor."

■ It becomes axiomatic therefore after analyzing this equitable remedy that a judgment creditor cannot in a fraudulent conveyance action be the recipient, as against the fraudulent transferor, of a money judgment,

for the very basis of this action is the judgment debt he is endeavoring to collect. A different situation might be presented in an action in which special damages were alleged and proved. To award the judgment creditor a money judgment would amount to an increase in the judgment debt owed to the judgment creditor by the fraudulent transferor.

■ We therefore hold that the trial court's judgments in the family home case (No. 16098) and the auction business case (No. 16378) must be modified to delete all awards of money damages against A. D. Miller, the fraudulent transferor and judgment debtor.

## II.

■ We turn next to the question of the propriety of the money judgments imposed by the trial court against the fraudulent transferee Genevieve H. Miller. It is the general rule that as long as the subject property remains in the possession of the fraudulent transferee in toto and is not depreciated by any action of the fraudulent transferee, a personal judgment against such transferee will not be sustained. See *Hy-Lo Unit and Metal Products Company v. Ryon,* 21 Cal. App.2d 38, 68 P.2d 393. See also 37 C.J.S. *Fraudulent Conveyances* §444 and cases cited thereunder.

■ However, under special circumstances it has nevertheless been held to be in equity's power to hold a fraudulent transferee personally liable. Such special circumstances generally involve some activity of the fraudulent transferee in causing the property involved to be depreciated in value while in his hands or causing the property, either wholly or in part, to be placed beyond the reach of the court. Equity in such events will not allow itself to be outwitted or frustrated. It has the power to and will go to the extent necessary to achieve equitable results. If a money judgment against the fraudulent transferee will accomplish the desired results, it will be imposed in favor of the judgment creditor. Such a judgment, however, by its very nature

will be limited in amount to the loss in value of the subject property or if the property involved has been completely disposed of and beyond the reach of the court, the judgment will be limited to the full value of the property which would have otherwise been subject to the creditor's claim. Also, since such a personal judgment is to restore lost value in the property fraudulently conveyed, and is in lieu of returning this property fully to its prior ownership in the fraudulent transferor, the amount of this judgment when satisfied must be credited to the judgment claim. By its very nature, it cannot be an additional judgment, which would in effect increase the basic judgment claim.

Typical of those cases involving such special circumstances is *Leifer v. Murphy,* 149 Misc. 455, 267 N.Y.S. 701 wherein the husband, faced with a judgment, placed a third mortgage on the family home. Part of the proceeds were paid to the wife in the form of stock of a corporation for which the wife gave no consideration. The judgment creditor sought to nullify the third mortgage. In the meantime, however, the first and second mortgages were foreclosed and extinguished remaining equities in the family home. The trial court found that setting aside the third mortgage would avail nothing. Under these circumstances, it was stated:

"Among equity's manifold weapons is 'the power to adapt its relief to the exigencies of the case.' "

On the theory that the receipt by the wife of part of the proceeds from the third mortgage was a fraudulent conveyance, it was held that justice demands that the wife as a transferee, must be disgorged of the amount of her gratuity. A personal judgment against the wife as a fraudulent transferee was upheld.

█ It is therefore our view in Case No. 16098 involving the family home, that the $4,525 judgment against Genevieve H. Miller, the fraudulent transferee, is supported by the special circumstances involved. After the conveyance to her of A. D. Miller's one-half interest

in the family home, she caused the debt thereon to be increased in the sum of $9,050. This, in effect, caused A. D. Miller's prior interest in this property to be decreased in the amount of $4,525, and therefore, this asset upon being made subject to the judgment creditor's claim was depreciated in value by this amount.

Consequently, that part of the trial court's judgment assessing a personal judgment against Genevieve H. Miller, the fraudulent transferee, in the sum of $4,525 in favor of the judgment creditor is affirmed.

### III.

As to the judgment for $1,296 against the trans-feree in Case No. 16378 involving the auction business, we perceive, after a painstaking examination of the record, no basis for this personal judgment. The trial court, in its extensive findings mentions nothing which might be considered to be the basis for this judgment in this particular amount.

Therefore, the trial court's judgment in Case No. 16378 involving the auction business must be modified to delete the $1,296 award against Genevieve H. Miller, the fraudulent transferee.

### IV.

The award of exemplary or punitive damages in equity actions or as incidental to the equitable relief, is generally held to be improper. Annot., 48 A.L.R.2d 947 (1956).

Although we could not find a Colorado case where this particular issue has been treated in depth, we have noted the single case of *Littlejohn v. Grand International Brotherhood of Locomotive Engineers,* 92 Colo. 275, 20 P.2d 311 wherein our court has stated without discussion or analysis that exemplary damages are not recoverable in equity.

The equitable remedy of setting aside a fraudulent conveyance on a complaint of a judgment creditor, in our view is not compatible with an award of exemplary damages. Inherent in this remedy is the restora-

tion of the ownership status in a fraudulent transferor thereby allowing a judgment creditor to reach the asset, and aid him in the collection of his judgment debt. Where the single remedy of voiding a fraudulent conveyance is sought and secured by the judgment creditor, an additional award of exemplary damages, even where the evidence goes to the extent of showing that the fraudulent transferor and transferee acted with malice, intent, and design in an effort to hinder or prevent the collection of a judgment, is inherently not includable as a part of the remedy or as incidental thereto. It is our conclusion that the trial court in an equitable action involving an alleged fraudulent conveyance, does not have the inherent power to award exemplary damages.

Furthermore, we hold that our statute, C.R.S. 1963, 41-2-2, which authorizes the assessment of exemplary damages in certain civil actions, does not extend itself to the inclusion of exemplary damages in the type of equitable action we are here concerned with in this decision. Also, the statutory authority in C.R.S. 1963, 59-1-17, which provides for the equitable remedy sought in Kaiser's complaint, allows only the voiding of the conveyances, and nothing more. Nevertheless, as expressed heretofore, a court of equity has the inherent power to award actual damages under certain circumstances in order to accomplish the fulfillment of the equitable remedy. We hold that the trial court was without statutory authority in awarding Kaiser exemplary damages.

The trial court's judgments in the family home case (No. 16098) and the auction business case (No. 16378) must be modified to delete all awards of exemplary damages.

The judgments of the trial court are ordered modified in accordance with the directions herein contained; otherwise, the judgments of the trial court in both cases are affirmed.

Mr. Chief Justice Moore, Mr. Justice Sutton and Mr. Justice Day concur.